**Roger CALDWELL, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 10S00–9806–CR–346.

Supreme Court of Indiana.

Jan. 27, 2000.

---

Jeffrey D. Stonebraker, Jeffersonville, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Roger Caldwell was found guilty but mentally ill of murder and resisting law enforcement and was also convicted on two counts of carrying a handgun without a license. He was sentenced to seventy years imprisonment. In this direct appeal, he contends that the trial court erred by refusing his tendered instructions on the consequences of the verdicts guilty but mentally ill and not responsible by reason of insanity. Caldwell also argues that the trial court failed to give adequate consideration to his mental illness as a mitigating circumstance in sentencing. We agree that the refusal to instruct was error and reverse and remand for proceedings consistent with this opinion.

### Factual and Procedural Background

On November 6, 1996, the Clark County Sheriff's Department received a report of a trespasser firing shots in the Tunnel Mill Boy Scout Camp. Captain Ronald Ross responded to the call. When he arrived at the camp, Ross heard a shout from a shed and found Andy Campbell, the caretaker of the Camp, inside. Campbell had been shot in the stomach, but had managed to call 911 and write down that his assailant had driven a Chevy station wagon with Ohio license plate ABV 7156. Campbell was also able to describe the man who shot him as a white male, with long gray sideburns, forty to fifty years old, wearing a brown coat and blue pants. Ross gave this description to the police dispatch.

Lieutenant James Ennis was on patrol when he heard the dispatch and soon saw a station wagon with Ohio license plates near the Camp. Ennis turned on his siren and lights but the station wagon proceeded at or below the speed limit and refused to stop. Ennis followed until two other officers joined the low-speed chase and attempted to halt the station wagon with a "rolling stop" by placing police cars at the front, side, and rear of the station wagon and slowing down to force the station wagon to a halt. The station wagon struck the car in front of it and swerved into the side of Ennis' car, forcing Ennis off the road. Ennis was able to regain control of his vehicle and eventually the station wagon was brought to a stop. Ennis approached the station wagon, drew his gun, and demanded that the driver exit the vehicle. When the driver, who turned out to be

Caldwell, refused to respond, Ennis reached into the car, grabbed him, and pulled him out of the car.

Police officers found a .357 caliber revolver in a holster on Caldwell's person and a nine millimeter semi-automatic pistol with four live rounds and two empty casings on the floor of the car. A nine millimeter shell casing that was conclusively determined to be from Caldwell's gun was also recovered at the Camp.

Campbell died as a result of a gunshot wound to the torso. Caldwell was charged with murder, resisting law enforcement, and two counts of carrying a handgun without a license. In January and February of 1997 Caldwell was examined by two court-appointed psychiatrists, diagnosed as a paranoid schizophrenic,[1] found incompetent to stand trial, and committed to the Department of Mental Health. After six months of treatment, Caldwell "attained the ability to understand the proceedings and assist in the preparation of his defense," but was required to take daily medication. On February 2, 1998, after a three-day trial, a jury found Caldwell guilty but mentally ill of murder and resisting law enforcement and guilty of two counts of carrying a handgun without a license.

### Jury Instructions

At trial, Caldwell tendered the following instructions detailing the consequences of the verdicts guilty but mentally ill and not responsible by reason of insanity:

Instruction No. 16

Whenever a defendant is found guilty but mentally ill at the time of the crime, the Court shall sentence the defendant in the same manner as a defendant found guilty of the offense.

At the Department of Corrections, the defendant, found guilty but mentally ill,

shall be further evaluated and treated as is psychiatrically indicated for his mental illness.

Instruction No. 17

Indiana law provides that whenever a Defendant is found not responsible by reason of insanity at the time of the crime, the prosecuting attorney shall file a written petition for mental health commitment with the Court. The Court shall hold a mental health commitment hearing at the earliest opportunity after the finding of not responsible by reason of insanity at the time of the crime, and the Defendant shall be detained in custody until the completion of the hearing.

The trial court refused the instructions and Caldwell objected.

In the State's rebuttal to Caldwell's closing argument, the prosecutor made the following comment:

Don't by your verdict and [sic] tell us that he's not responsible, don't tell us that he has a license to kill. Don't let him walk out of this courtroom with the rest of us when this case is over with, don't let him get away with murder. Don't let him get away with murder.

Caldwell again objected and requested that the rejected instructions or an admonishment be given to the jury to eliminate any confusion that the prosecutor's comments may have engendered in the jury. The trial court overruled Caldwell's objection and again refused to give the requested instructions or an admonishment.

■ On appeal, Caldwell claims that the trial court's refusal to give the two requested instructions after inappropriate and misleading comments by the State in its closing argument was reversible error. As a general proposition, it is not proper to instruct the jury on the statutory procedures to be followed after a verdict of guilty but mentally ill or not responsible

---

1. Before his treatment, Caldwell believed that the trial judge was a member of the Ku Klux Klan, his own lawyer was a D.E.A. and F.B.I. agent connected to the assassination of President Kennedy, the jail guards were paid killers, there were cancer cells in the lime jello

served in jail, the government had hired people to kill those who were on social security and thereby reduce its payments, and that the Pope and the Masons were conspiring with the prosecutor and the federal government in the current action.

by reason of insanity. *See Palmer v. State*, 486 N.E.2d 477, 480 (Ind.1985); *see also Smith v. State*, 502 N.E.2d 485, 488 (Ind.1987). However, a defendant is entitled to an instruction on the post-trial procedures if "an erroneous view of the law on this subject has been planted in [the jurors'] minds."[2] *Dipert v. State*, 259 Ind. 260, 262, 286 N.E.2d 405, 407 (1972).

In *Dipert*, the prosecutor told the jury that the defendant would go "scot free" in response to a question by a prospective juror about what would happen to the defendant if he was found not guilty by reason of insanity. *Id.* at 261, 286 N.E.2d at 406. The trial court refused to admonish the jury to disregard the remarks or give an instruction about the post-trial proceedings involved in a verdict of not guilty by reason of insanity. *See id.* at 262, 286 N.E.2d at 406. This Court stated that these inappropriate comments created an erroneous impression of the law which the trial court should have rectified by instructing the jury that the law provides for additional proceedings but that this was not a matter for the jury to consider. *See id.*, 286 N.E.2d at 406–07; *see also Williams v. State*, 555 N.E.2d 133, 139 (Ind.1990) (trial court's statement that "there is a very real possibility" that commitment proceedings would occur if defendant was found to be insane is potentially misleading); *but cf. Miller v. State*, 518 N.E.2d 794, 796–97 (Ind.1988) (no erroneous impression of law given where doctor stated that the defendant was a dangerous person); *Palmer*, 486 N.E.2d at 480–81 (verdict forms tracking statutory language were not misleading).

In this case, the prosecutor's closing remarks created an erroneous impression of the law. Although not as misleading as the statements in *Dipert*, these comments were given to the jury directly before deliberations began and implied that Caldwell would be able to walk out of the courtroom with the jury if he was found not responsible by reason of insanity. The State argues that its closing argument did not create an erroneous impression because the jury could have returned a verdict of not guilty thereby letting Caldwell "walk out of the courtroom" with the jury. Although Caldwell did not stipulate to the facts or admit to the murder, neither did he contest them. Based on the evidence presented and Caldwell's closing argument, the sole issue for the jury's consideration appears to have been Caldwell's mental state at the time of the murder. As a result, the chances of a not guilty verdict were slim to none, and there was a real possibility that the jury would interpret the prosecutor's statement to mean that a verdict of not responsible would let Caldwell go free. Because the prosecutor created an erroneous impression of what would happen to Caldwell if he was found not responsible by reason of insanity, the trial court's failure to either admonish the jury or give the tendered instructions was reversible error.[3]

The disposition of the first claimed error results in a new trial. Therefore, there is no need to address the claim of sentencing error. Because the evidence was sufficient to support the jury's verdict, double jeop-

2. This Court has also allowed general instructions on the consequences of the various verdicts to avoid jury confusion. *See Barany v. State*, 658 N.E.2d 60, 65 (Ind.1995) (quoting *Smith*, 502 N.E.2d at 488) ("However, in cases involving the insanity defense, there will be increased speculation on the part of the jury on the differences in sentencing between verdicts of guilty, guilty but mentally ill and not responsible by reason of insanity. In order to dispel the speculation and to focus the jury on the issue of guilt, rather than possible punishment, an instruction explaining the consequences of each determination in a general way can be appropriate and beneficial to the accused.").

3. The State further argues that the tendered instructions were improper because they did not include a reminder to the jury that it was not to consider post-trial proceedings in reaching a verdict. Although the tendered instructions appear to be incomplete in this respect, the court's Instruction No. 24 dealt with this point.

ardy is no bar to a retrial. *See Thompson v. State*, 690 N.E.2d 224, 237 (Ind.1997).

### Conclusion

The judgment of the trial court is reversed and this cause is remanded for proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.