# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 20 2018, 11:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Justin R. Wall
Wall Legal Services
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Kelly D. Ratliff,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

April 20, 2018

Court of Appeals Case No.
85A05-1712-CR-2891

Appeal from the Wabash Circuit Court

The Honorable Robert R. McCallen, III, Judge

Trial Court Cause No.
85C01-1607-F5-818

**Baker, Judge.**

[1] Kelly Ratliff appeals his conviction of and sentence for Level 6 Felony Domestic Battery.[1] He argues that the trial court erred by denying his motions for mistrial, that there is insufficient evidence to support his conviction, that the trial court erred when imposing his sentence, and that his sentence is inappropriate in light of the nature of the offense and his character. Finding no error, that the evidence is sufficient, and that the sentence is not inappropriate, we affirm.

## Facts

[2] At some point, Ratliff and Stephanie Hood had been in a relationship and had two children together, including E.R. In July 2016, when E.R. was fourteen years old, Ratliff was in a relationship with Ashley Hopkins. On July 11, 2016, Hood dropped E.R. off at Hopkins's house so that E.R. could spend time with Hopkins and her son. Ratliff and Hopkins had argued earlier that day and had temporarily broken up. While E.R. was at Hopkins's house, he sent Ratliff angry text messages. Ratliff investigated and discovered that E.R. was at Hopkins's house.

[3] A little after midnight, E.R., Hopkins, and Hopkins's son were watching television in Hopkins's bedroom when Ratliff suddenly entered the room. Ratliff was angry, and he yelled, "You can't play with my heart. I can't believe you did this." Tr. Vol. II p. 246-47. Hopkins's son ran out of the room. Ratliff

---

[1] Ind. Code § 35-42-2-1.3.

accused Hopkins and E.R. of having an affair. Ratliff picked E.R. up by his hair, slapped him, punched him in the head with a closed fist, and threw him against the wall. Ratliff then made both E.R. and Hopkins get into the closet, and he kicked them. Ratliff held scissors to E.R.'s throat, told his son that he was going to kill him, and threatened to cut his head off. Hopkins begged Ratliff to stop hurting E.R. When E.R. tried to pick up his phone, Ratliff took it and smashed it.

[4] Ratliff then grabbed E.R. by the back of his neck, took him to his truck, and drove him to Ratliff's mother's house. Once there, Ratliff ordered E.R. to lie down on the couch and yelled at him. Ratliff then told his mother to drive E.R. to Hood's house. After they left, Ratliff called Hood. He was distraught and told her that he had hurt E.R, that he had taught E.R. a lesson, and that he was afraid he had killed Hopkins. During their conversation, he said he had "ripped them up like rag dolls," that his son was a "little mother f****r," that he had caught Hopkins and E.R. "f*****g on the bed," and that E.R. was lucky to be alive. Tr. Vol. III p. 132.

[5] On July 22, 2016, the State charged Ratliff with Level 5 felony intimidation and Class A misdemeanor domestic battery; the State subsequently filed a Level 6 felony enhancement for the domestic battery charge. A jury trial took place on October 31 and November 1, 2017. During the trial, when asked what he was texting Ratliff about on the night of the offense, E.R. testified that he was angry with Ratliff for "hitting Ashley." Tr. Vol. II p. 230. Ratliff objected and moved for a mistrial. Outside of the jury's presence, the trial court noted that the

testimony at issue did not involve conduct against E.R., the victim in this case. The trial court denied the motion for a mistrial, read to counsel for both parties the proposed jury admonition, and incorporated the attorneys' feedback. When the jury returned, the trial court stated that any act allegedly committed against someone else could not be considered by the jury as evidence that Ratliff committed any of the charged crimes against E.R. The jurors all indicated that they understood this instruction.

[6] Later in the trial, regarding visitation between Ratliff and E.R., Hood testified that "[t]here was some in the beginning after we split up and he went to jail for a while." Tr. Vol. III p. 118. Ratliff again moved for a mistrial, arguing that the record was now replete with prejudicial references to prior bad acts. The trial court again denied the motion, finding that the improper testimony did not place Ratliff in grave peril nor was it intentionally elicited. The trial court admonished the jury to disregard this testimony and not to consider or mention it during deliberations, and told the jury that if anyone violated this instruction, each juror was charged with the duty to notify the trial court. The jurors all indicated that they could follow this instruction.

[7] The jury found Ratliff guilty of domestic battery but not guilty of intimidation. The trial court found that Ratliff had a prior conviction for domestic battery and enhanced his conviction to a Level 6 felony. At the December 1, 2017, sentencing hearing, the trial court found several aggravating factors, including Ratliff's extensive criminal record, his previous failed attempts at probation,

and his lack of remorse.  The trial court found no mitigating factors.  The trial court imposed a sentence of two and one-half years.  Ratliff now appeals.

# Discussion and Decision

Ratliff presents four issues on appeal, which we consolidate and restate as:  1) whether the trial court erred by denying his motions for mistrial, 2) whether there is sufficient evidence to support his conviction, and 3) whether the sentence should be revised.

# I.  Motions for Mistrials

Ratliff argues that the trial court should have granted his motions for mistrial based on the gravity of peril he was in due to E.R.'s and Hood's testimony.  "[A] mistrial is an extreme remedy that is only justified when other remedial measures are insufficient to rectify the situation."  *Mickens v. State*, 742 N.E.2d 927, 929 (Ind. 2001).  We review a trial court's decision to grant or deny a motion for mistrial for error "because the trial court is in the best position to gauge the surrounding circumstances of an event and its impact on the jury."  *Pittman v. State*, 885 N.E.2d 1246, 1255 (Ind. 2008).  "A mistrial is appropriate only when the questioned conduct is so prejudicial and inflammatory that the defendant was placed in a position of grave peril to which he should not have been subjected."  *Id.* (quotations omitted).  We measure the gravity of the peril by considering the conduct's probable persuasive effect on the jury.  *Id.*

Ratliff contends that his motions for mistrial should have been granted because of prejudicial evidence.  A trial court's admonishment to the jury is presumed to

cure any error in the admission of evidence. *Isom v. State*, 31 N.E.3d 469, 481 (Ind. 2015). "On appeal, we must presume that the jury obeyed the court's instructions in reaching its verdict." *Id.* (citation omitted).

[11] Ratliff contends that the trial court erred by denying his motion for mistrial after E.R. testified that he was angry with Ratliff for "hitting Ashley." Tr. Vol. II p. 230. Although both parties agreed during the trial that this testimony was improper, the trial court determined that an admonishment was sufficient to cure the prejudice. The trial court admonished the jury as follows:

> . . . ladies and gentlemen, I want to instruct you as follows. The two charges against Mr. Kelly Ratliff are Battery and Intimidation. The alleged victim is [E.R.], not Ashley Hopkins. You are ordered and admonished that the testimony elicited by the State from [E.R.], as to any acts allegedly committed by Mr. Ratliff against someone else, are not to be considered by you as any evidence that the Defendant committed any of alleged acts against [E.R.] Does that make sense to you all? Nodding your head yes. All right. . . .

*Id.* at 241-42. Ratliff does not explain why the trial court's admonishment was not sufficient to cure the error. The admonishment was clear and unequivocal; it redirected the jury's attention to the charged offenses and ordered the jurors to not consider during their deliberations any evidence about any interactions Ratliff might have had with other people. The jurors indicated that they understood this instruction. Although Ratliff contends that the testimony was prejudicial because it established to the jury that he is a bad person who beats his girlfriend, there is nothing in the record to overcome the presumption that

the jury obeyed the trial court's admonishment. Moreover, any prejudice stemming from this testimony was limited; the testimony was brief and provided no details about what had taken place.[2]

[12] Ratliff also challenges the trial court's denial of his motion for mistrial after Hood testified that Ratliff had gone "to jail for a while." Tr. Vol. III p. 118. Ratliff contends that this testimony was prejudicial and inflammatory, and the State acknowledges that it was improper. The trial court determined that an admonishment was sufficient to cure any prejudice and admonished the jury as follows:

> I am instructing you as follows. When you were last in the courtroom, there was an objection made on which I needed to rule. . . . I have now sustained that objection, which means I granted it and ruled as a matter of Indiana law that the testimony given by Ms. Hood, that prompted the objection, was improperly placed before you. Therefore, you are now ordered and admonished to disregard entirely such testimony. It is not to be mentioned or considered by you in any way during the course of this trial, and particularly, shall not be mentioned or considered in your deliberations or any discussions in or outside of the jury room. You are each charged to bring any violation of this order

---

[2] In addition, both Ratliff and the State discuss testimony by E.R. that the relationship between Ratliff and Hopkins was abusive in the context of a motion for mistrial. However, the record does not show that Ratliff moved for mistrial after that particular piece of testimony. Instead, it shows that Ratliff objected and the trial court called a recess and dismissed the jury. The trial court then instructed E.R. about the limits of his testimony. E.R stated that he understood the instructions, and counsel for both parties agreed that the trial court's instruction was clear. The trial court and counsel then discussed a motion in limine for prior bad acts. The trial court asked whether a limiting instruction was necessary, and Ratliff's counsel said it was not. The trial court then called the jury back in. We need not consider whether the trial court should have granted an unasked-for mistrial.

to the Court's attention through the bailiff.  Everybody
understand that okay?  All right.  They're nodding their heads
yes.

*Id.* at 124-25.  Again, Ratliff fails to explain why this admonishment was
insufficient to address the improper testimony.  As with the earlier
admonishment, the trial court was clear that the jurors were not to consider the
testimony in any way, and the jurors all indicated that they understood the trial
court's instruction.  There is no evidence to overcome the presumption that
they obeyed the instruction; indeed, the fact that no juror notified the bailiff of a
violation of the instruction shows that they followed it.  Moreover, the
challenged testimony was brief in nature and included no details about the
incarceration.  An admonishment was sufficient to cure any prejudice from the
reference.  *E.g.*, *Lucio v. State*, 907 N.E.2d 1008, 1011 (Ind. 2009) (affirming
denial of mistrial where witness's reference to defendant's time in jail was
fleeting, inadvertent, and only a minor part of the evidence against defendant
and the jury was admonished).

[13]     Ratliff further argues that the totality of this evidence placed him in grave peril
because, taken together, the testimony indicated that he is an angry person with
a propensity for violence.  But we note that the jury acquitted him of
intimidation, the more serious of the two charges that he faced.  The
intimidation verdict shows that the jury did not infer from the testimony that
Ratliff was an angry and violent person who was necessarily guilty of the crimes
with which he was charged.  Instead, the jury considered the evidence and

found Ratliff not guilty of one offense. If the trial court's refusal to grant a mistrial did not prejudice the jury's not guilty verdict as to one charge, its refusal could not have prejudiced the jury's guilty verdict as to another charge. *Rentas v. State*, 519 N.E.2d 162, 166 (Ind. Ct. App. 1988).

[14] In sum, in each instance, the trial court was in the best position to gauge the surrounding circumstances and the impact of the testimony and the impact of the admonishments on the jury. In each instance and collectively, the trial court did not err by denying Ratliff's motions for mistrial.

## II. Sufficiency of the Evidence

[15] Ratliff argues that there was insufficient evidence to support his conviction. Specifically, he argues that E.R. was the only witness who testified that Ratliff battered him, that E.R.'s testimony was incredibly dubious, and that his testimony is unsupported by circumstantial evidence. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the conviction. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

[16] Appellate courts may impinge upon a jury's function to judge the credibility of a witness, however, by applying the "incredible dubiosity" rule. *Smith v. State*,

34 N.E.3d 1211, 1221 (Ind. 2015). Application of the incredible dubiosity rule is limited to specific circumstances because we are extremely hesitant to invade the province of the jury. *Id.* To warrant application of the incredible dubiosity rule, there must be: "'1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence.'" *Id.* (quoting *Moore v. State*, 27 N.E.3d 749, 756 (Ind. 2015)).

[17] To convict Ratliff of Level 6 felony domestic battery, the State was required to prove beyond a reasonable doubt that Ratliff knowingly or intentionally touched a family or household member in a rude, angry, or insolent manner, and that Ratliff had a prior unrelated conviction for domestic battery. I.C. § 35-42-2-1.3. Ratliff concedes that E.R. is a family or household member; he only challenges whether the evidence establishes that he touched E.R. in a rude, angry, or insolent manner.

[18] E.R. testified that Ratliff was mad and screaming when he entered the bedroom; that Ratliff picked E.R. up by his hair, slapped him, punched him in the head, threw him against the wall, and kicked him; and that Ratliff held scissors to E.R.'s throat and threatened to kill him and cut off his head. Hopkins and Hood both testified and corroborated E.R.'s version of events. Ratliff's mother and sister also testified, and while their testimony was vague, it was not inconsistent with E.R.'s. It is for the factfinder to decide which witnesses to believe or disbelieve, and if the testimony believed by the factfinder is enough to support the verdict, we will not disturb it. *Ferrell v. State*, 746

N.E.2d 48, 51 (Ind. 2001). Here, the jury apparently believed the testimony of E.R., Hopkins, Hood, Ratliff's mother, and Ratliff's sister; accordingly, the evidence is sufficient to support a guilty verdict for domestic battery.

[19] The incredible dubiosity rule does not apply to this case. As noted above, E.R. was not the sole testifying witness—Hopkins, Hood, Ratliff's mother, and Ratliff's sister all testified. Specifically, Hopkins testified that Ratliff entered the room upset and yelling, that he forced both of them into the closet, that he had scissors in his hand, that he kicked her, and that he threatened to kill both of them. Hopkins testified that, although her view was blocked, she was "pretty sure" that Ratliff hit and kicked E.R. and that she saw Ratliff "dive over" the bed toward E.R. while making a fist "like he was going to hit him." Tr. Vol. III p. 52, 56. Hood testified that Ratliff called her that night, distraught, and told her that he had hurt E.R. Thus, the first factor of the incredible dubiosity rule has not been met because multiple witnesses offered testimony that the jury could have relied upon in reaching its verdict. We need not consider the remaining factors but note that they, likewise, are not met in this case.

[20] In sum, the incredible dubiosity rule is inapplicable in the present case and cannot serve as grounds for overturning the jury's verdict. Further, based on the evidence presented at trial, the jury could have found each element of domestic battery beyond a reasonable doubt. Accordingly, there was sufficient evidence to support Ratliff's conviction.

# III. Sentencing

Regarding his sentence, Ratliff argues that the trial court erred by using an improper aggravator and that his sentence is inappropriate in light of the nature of the offense and his character.

# A. Aggravating Factor

Ratliff argues that the trial court erred by finding his lack of remorse as an aggravating factor. Specifically, he argues that any showing of remorse would be inconsistent with the fact that he maintained his innocence throughout the proceeding, and therefore a lack of remorse should not be used against him. Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g on other grounds at* 875 N.E.2d 218. A trial court may err in its decision if it is clearly against the logic and effect of the facts and circumstances before the court. *Id.* A trial court may err by finding aggravating or mitigating factors that are not supported by the record, by omitting factors that are clearly supported by the record and advanced for consideration, or by finding factors that are improper as a matter of law. *Id.* at 490-91.

A trial court does not err when it considers "as an aggravating factor the lack of remorse by a defendant who insists upon his innocence." *Georgopulos v. State*, 735 N.E.2d 1138, 1145 (Ind. 2000). "Rather, the lack of remorse is regarded only as a modest aggravator." *Id.* A defendant exhibits a lack of remorse "when he displays disdain or recalcitrance, the equivalent of 'I don't care.'"

*Cox v. State*, 780 N.E.2d 1150, 1158 (Ind. Ct. App. 2002). Here, Ratliff did display a lack of remorse. Regarding his behavior, he stated that he thought he did not break any laws and that he "was in [his] rights as a father." Appellant's Conf. App. p. 10. Ratliff testified that he yelled, intentionally broke E.R.'s phone, and forced E.R. to leave Hopkins's house even though E.R.'s mother, who was E.R.'s custodial parent, had given him permission to be there. Regardless of whether he maintained his innocence, Ratliff failed to accept any responsibility for what transpired that night. In other words, he showed a lack of remorse.

[24] The trial court considered Ratliff's lack of remorse as a modest aggravating factor, stating that he has "shown no remorse, and that's his right." Tr. Vol. IV p. 18. And the weight of this factor was far outweighed by the other aggravating factors—Ratliff's extensive criminal history and the past failed attempts to rehabilitate him through probation— that the trial court found. The trial court did not err by considering Ratliff's lack of remorse as a modest aggravating factor.

## B. Appropriateness of Sentence

[25] Ratliff asserts that his sentence is inappropriate in light of the nature of the offense and his character pursuant to Indiana Appellate Rule 7(B). In considering an argument under Rule 7(B), we must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision— since the 'principal role of [our] review is to attempt to leaven the outliers,' and

not to achieve a perceived 'correct' sentence . . . ." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[26] Ratliff was convicted of Level 6 felony domestic battery. For this conviction, he faced a sentence of six months to two and one-half years imprisonment, with an advisory term of one year. Ind. Code § 35-50-2-7(b). The trial court imposed a sentence of two and one-half years.

[27] With respect to the nature of the offense, after receiving text messages from E.R., Ratliff intentionally sought him out. He was angry when he arrived at Hopkins's house, and without any foundation, he accused his girlfriend and his teenage son of having an affair. Ratliff then violently attacked his son; he picked him up by his hair, slapped him, punched him in the head, and threw him against the wall. He forced E.R. into the closet and kicked him. Ratliff held scissors to E.R.'s throat, told E.R. that he was going to kill him, and threatened to cut his head off. When E.R. tried to pick up his phone, Ratliff smashed it. Ratliff then forced his son into his truck and drove him to Ratliff's mother's house. Afterwards, Ratliff told Hood that he had taught E.R. a lesson.

[28] With respect to Ratliff's character, Ratliff has four prior felony convictions, including domestic battery, possession of a controlled substance, possession of precursors, and conspiracy to possess precursors. He also has misdemeanor convictions for disorderly conduct, minor in possession of alcohol, operating

while intoxicated, resisting law enforcement, possession of marijuana, battery, and invasion of privacy. In addition, he has four prior battery charges, one prior intimidation charge, and charges for possession of marijuana and public intoxication that were dismissed for unspecified reasons. Ratliff has violated probation three times. He continues to show disregard for the law—while out on bond in this case, he was charged with a violent offense against Hopkins.

[29] Under these circumstances, we find that the sentence imposed by the trial court is not inappropriate in light of the nature of the offense and Ratliff's character.

[30] The judgment of the trial court is affirmed.

Kirsch, J., and Bradford, J., concur.