## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



FILED

Aug 30 2018, 8:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dale W. Arnett
Winchester, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kori F. Rice,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 30, 2018<br><br>Court of Appeals Case No.<br>68A01-1706-CR-1314<br><br>Appeal from the Randolph Circuit Court<br><br>The Honorable Jay L. Toney, Judge<br><br>Trial Court Cause No.<br>68C01-1611-F3-750 |

**Pyle, Judge.**

# Statement of the Case

Kori F. Rice ("Rice") was convicted, following a jury trial, of Level 3 felony robbery[1] and Class A misdemeanor theft[2] and was found to be an habitual offender.[3] He now appeals his sentence and contends that the trial court abused its discretion in its determination of aggravating and mitigating circumstances. Concluding that the trial court did not abuse its discretion when sentencing Rice, we affirm his sentence.

We affirm.

# Issue

Whether the trial court abused its discretion when sentencing Rice.

# Facts

On October 31, 2016, Rice spent the evening at his girlfriend's apartment drinking and smoking marijuana with his friend, Morgan Thompson ("Thompson"); Morgan's cousin, Joseph Ashbrook ("Ashbrook"); and a seventeen-year-old male neighbor named J.Q. ("J.Q."). Rice and the others, who were all intoxicated, left the apartment around midnight. They got into Thompson's car, and Rice drove.

---

[1] IND. CODE § 35-42-5-1(1).

[2] I.C. § 35-43-4-2(a).

[3] I.C. § 35-50-2-8.

[4]     As they were in driving, Ashbrook called his father ("Ashbrook's father") on his cell phone. Ashbrook's father could tell that Ashbrook was "very upset" and appeared to have "been crying." (Tr. Vol. 2 at 226). Ashbrook told his father that he was "scared" and that Rice and Thompson were "robbing him." (Tr. Vol. 2 at 227). Ashbrook also asked his father to take his shotgun and be at Ashbrook's house when he arrived home. The phone call then disconnected, and Ashbrook's father was unable to reconnect with Ashbrook.

[5]     Thereafter, around 12:30 a.m., Ashbrook called his mother ("Ashbrook's mother"). Ashbrook, who sounded "very shaken[] and frightened[,]" told his mother that he was on his way home and that she should call the sheriff because he was getting beaten up and robbed. (Tr. Vol. 2 at 235). The phone call then disconnected. About ten minutes later, Rice called his mother back. Ashbrook again said that he was getting beaten and robbed, told her to call the sheriff, and said he was getting close to home. The phone call again disconnected while he was talking.

[6]     Ashbrook's mother watched from the front window and saw a car pull up and stop on the road across from her house. She saw that three of the car doors opened and saw that some people, including the driver, got out and went to the side of the road. Five to ten minutes later, the people got back into the car, and Ashbrook's mother saw that the driver was the last person to get back into the car. After the car sped away, Ashbrook's mother saw Ashbrook's head pop up from the ditch on the side of the road. Ashbrook got out of the ditch, "weaved across the road[,]" and eventually went into his mother's house. (Tr. Vol. 2 at

239).   Ashbrook, who was crying and limping from pain in his leg, had red marks on various parts of his body, including his face, neck, and ribs.  He told his mother that, during the drive home, Rice, Thompson, and "some other kid" had "decided to rob him." (Tr. Vol. 2 at 241).  Ashbrook told her that after Rice, Thompson, and J.Q. had pulled Ashbrook out of the car, they threw him into the ditch and "took about fifteen blows each on him." (Tr. Vol. 2 at 241).  They then took Ashbrook's phone and wallet.

[7]  Ashbrook's mother called the Randolph County Sheriff's Department. Ashbrook told the sheriff dispatcher that Rice and Thompson had taken his phone and money and beat him up, and he gave identifying information about Thompson's car.  When a sheriff deputy arrived at Ashbrook's home, Ashbrook gave the deputy identifying information about Rice and Thompson.  Ashbrook was later taken by ambulance to the hospital.[4]

[8]  Meanwhile, after leaving Ashbrook in the ditch, Rice drove to a convenience store and, using some of the money taken from Ashbrook, bought some marijuana from someone in the parking lot.  At that same time, police officers, who had received the identifying information given by Ashbrook, spotted Thompson's car in the convenience store parking lot and stopped to investigate.

---

[4] Ashbrook was released from the hospital that same morning.  He died later that day, but his death was not attributable to the injuries he sustained during the roadside beating.  Due to Ashbrook's death, the State was unable to call him as a witness during Rice's jury trial.

The officers found Morgan and J.Q. in Thompson's car and arrested them. Rice, who went into the store when the police arrived, got away from the area.

[9] Days later, Rice was interviewed by the police. Rice told the officer that he had not been involved with the crimes against Ashbrook. In fact, Rice denied that he had been with Ashbrook, Thompson, and J.Q. Rice claimed that he had been with his girlfriend when the offenses against Ashbrook had occurred, and he convinced his girlfriend to confirm that story to the police. Rice's girlfriend initially lied to police and told them that Rice had been with her, but a few weeks later, she told the police the truth and stated that she could not be Rice's alibi.

[10] The State charged Rice with Level 3 felony robbery and Class A misdemeanor theft and alleged that he was an habitual offender.[5] In April 2017, the trial court held a two-day jury trial. During the trial, the State's witnesses included Thompson, Ashbrook's father, Ashbrook's mother, Rice's girlfriend, and some police officers, who provided testimony regarding the facts above.

[11] Thompson, who had been granted use immunity for his testimony, testified that he had passed out in the car when Rice drove the group home and stated that he had woken up when he had heard a commotion, which was Rice and J.Q. kicking and punching Ashbrook by the side of the road. Thompson further testified that, after he had gotten out of the car, Rice told him to grab

---

[5] Thompson and J.Q. were also charged with robbery and theft.

Ashbrook's money. Thompson admitted that he took Ashbrook's money out of Ashbrook's pocket, and he testified that J.Q. took Ashbrook's phone.

[12] During Rice's case-in-chief, he called J.Q. as a witness. J.Q., who had been offered a deal to have his case remain in juvenile court, pled guilty to robbery and was placed on probation. J.Q. corroborated Ashbrook's father's testimony that Ashbrook had used his cell phone in the car and had mentioned Rice's and Thompson's names. However, J.Q.'s testimony regarding the offenses against Ashbrook conflicted with Thompson's testimony. J.Q. testified that the group pulled to the side of the road to urinate, and he stated, that while there, he saw Thompson and Ashbrook "look like they [we]re about to fight." (Tr. Vol. 3 at 135). J.Q. testified that he went over by them in case Thompson needed help and that they all then started fighting. J.Q. admitted that he struck Ashbrook and took his phone. J.Q. testified that he saw Thompson hit Ashbrook but that he did not see Rice strike him. Additionally, J.Q. testified that Rice did not ask anyone to take anything from Ashbrook's pockets. When the State cross-examined J.Q., he admitted that he had previously told a police officer and had told the juvenile court, as part of his factual basis, that Rice, along with J.Q. and Thompson, had hit Ashbrook. J.Q. testified that he assumed Rice was hitting Ashbrook but that he did not specifically observe Rice hitting Ashbrook.

[13] During closing argument, Rice's defense theory was that the State could not prove its case because Rice did not personally take Ashbrook's phone or wallet from him and because there was conflicting evidence of whether Rice had hit Ashbrook. The State argued that the jury should find Rice guilty based on

accomplice liability. The jury found Rice guilty as charged and determined that he was an habitual offender.

[14] When sentencing Rice, the trial court determined that there were no mitigating circumstances. When discussing aggravating circumstances, the trial court focused on Rice's criminal history, which the trial court categorized as "quite serious." (Tr. Vol. 3 at 247). Rice's criminal history was comprised of multiple alcohol-related offenses, including two operating a vehicle while intoxicated convictions and an habitual substance offender adjudication; two convictions for Class B felony conspiracy to commit robbery, for which he received a twenty-year sentence and later violated his probation; a battery conviction; and criminal mischief conviction. The trial court also stated that Rice's lack of remorse "to this date" was an aggravating circumstance, but it did not elaborate any further on this aggravator. (Tr. Vol. 3 at 248). The trial court imposed a fourteen (14) year sentence, with twelve (12) years executed and two (2) years suspended to probation, for Rice's Level 3 felony robbery conviction and enhanced this sentence by twelve (12) years for Rice's habitual offender adjudication. The trial court also imposed a one (1) year sentence for Rice's Class A misdemeanor theft conviction and ordered it to be served concurrently to his robbery conviction. Thus, the trial court ordered Rice to serve an aggregate sentence of twenty-six (26) years with twenty-four (24) years executed and two (2) years suspended to probation. Rice now appeals.

# Decision

[15] Rice argues that the trial court abused its discretion in its determination of aggravating and mitigating circumstances. Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218 (Ind. 2007). So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion will be found where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490-91.

[16] Rice contends that the trial court abused its discretion by failing to consider his family support as a mitigating circumstance. A trial court is not obligated to accept a defendant's claim as to what constitutes a mitigating circumstance. *Rascoe v. State*, 736 N.E.2d 246, 249 (Ind. 2000). A claim that the trial court failed to find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493.

[17] Here, however, Rice cannot show that the trial court abused its discretion regarding its consideration of mitigating circumstances because he did not proffer family support as a mitigating circumstance. A "trial court does not abuse its discretion in failing to consider a mitigating factor that was not raised at sentencing." *Anglemyer*, 868 N.E.2d at 492. *See also Creekmore v. State*, 853 N.E.2d 523, 530 (Ind. Ct. App. 2006) (explaining that where a "defendant fails to advance a mitigating circumstance at sentencing," our appellate courts "will presume that the factor is not significant," and the defendant will be "precluded from advancing it as a mitigating circumstance for the first time on appeal"). During the sentencing hearing, Rice's counsel generally asked the trial court "to take everything in consideration" when sentencing Rice. (Tr. Vol. 3 at 246). His counsel did not, however, specifically advance family support as a mitigating circumstance for consideration by the trial court. Because Rice did not raise this mitigating circumstance and, moreover, because he has failed to show that it was both significant and clearly supported by the record, we conclude that the trial court did not abuse its discretion when it did not identify family support as a mitigating circumstance.

[18] Rice also argues that the trial court abused its discretion by finding lack of remorse to be an aggravating circumstance. Specifically, he contends that trial court's consideration of lack of remorse as an aggravating circumstance was improper because he "maintained his innocence[.]" (Rice's Br. 8). Rice contends that he "did not actively participate in the robbery and beating" of the victim and that he "demonstrated empathy" to the victim's family at sentencing

and expressed "regret that he had placed himself in the situation he was in." (Rice's Br. 8).

[19] A trial court may consider a defendant's lack of remorse as an aggravating circumstance. *Georgopulos v. State*, 735 N.E.2d 1138, 1145 (Ind. 2000). Furthermore, "it is not error for a trial court to consider as an aggravating factor the lack of remorse by a defendant who insists upon his innocence." *Id.* "A lack of remorse is displayed by a defendant when he displays disdain or recalcitrance, the equivalent of 'I don't care.'" *Cox v. State*, 780 N.E.2d 1150, 1158 (Ind. Ct. App. 2002). "This is distinguished from the right to maintain one's innocence, i.e., 'I didn't do it.'" *Id.* "We have suggested that a defendant's assertion of innocence may support a finding of lack of remorse if there is sufficient independent evidence of guilt." *Hollen v. State*, 740 N.E.2d 149, 159 (Ind. Ct. App. 2000) (citing *Bluck v. State*, 716 N.E.2d at 513 (Ind. Ct. App. 1999) and *Dockery v. State,* 504 N.E.2d 291, 297 (Ind. Ct. App. 1987)), *opinion adopted*, 761 N.E.2d 398 (Ind. 2002).

[20] Assuming without deciding that the trial court improperly considered Rice's lack of remorse to be an aggravating circumstance, any such impropriety would not require this Court to remand for resentencing given the trial court's finding of another valid aggravating circumstance. If a trial court abuses its discretion by improperly considering an aggravating circumstance, we need to remand for resentencing only "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Anglemyer*, 868 N.E.2d at 491. Here, our review of the

record shows that the trial court's discussion of aggravating circumstances focused on Rice's criminal history, which the trial court categorized as "quite serious[,]" and that the trial court's imposition of slightly enhanced sentences was essentially based on this undisputed criminal history aggravating circumstance. (Tr. Vol. 3 at 247). Thus, we are confident that the trial court would have imposed the same sentence even without the lack of remorse aggravator. Accordingly, we conclude that the trial court did not abuse its discretion when sentencing Rice. *See Georgopulos*, 735 N.E.2d at 1146 (explaining that "[o]nly one aggravator is necessary for the trial court to impose an enhanced sentence").

[21] Affirmed.

Vaidik, C.J., and Barnes, Sr.J., concur.