**In the Matter of the COMMITMENT OF Frank LINDERMAN.**

**No. 3–779 A 187.**

Court of Appeals of Indiana, Fourth District.

March 16, 1981.

Paula J. Machnik, Legal Intern, Valparaiso University School of Law Clinical Program, Terry E. Johnston, Valparaiso, for appellant.

Theodore L. Sendak, Atty. Gen., Michael Gene Worden, Asst. Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

CHIPMAN, Judge.

On January 19, 1979, the trial court ordered appellant Frank Linderman involuntarily committed to the Logansport State Hospital for an indefinite period of time. Linderman now appeals from that commitment order raising three issues for our review; because of our disposition of this case, we find it necessary to address only the following question: whether there was sufficient evidence to support the trial court's decision.

Reversed.

Our mental health code, specifically Ind. Code 16–14–9.1–3 and 16–14–9.1–10, authorizes the State to commit an individual who is found to be suffering from a mental illness and is either dangerous or gravely disabled. The code defines "dangerous" as "a condition in which a person as a result of mental illness presents a substantial risk that he will harm himself or others." Ind. Code 16–14–9.1–1(c). "Gravely disabled" is defined as "that condition in which a person . . . is in danger of coming to harm because of his inability to provide for his food, clothing, shelter, or other essential human needs." Ind. Code 16–14–9.1–1(b). It was the State's burden in this case to prove the facts justifying commitment by clear and convincing evidence. *Addington v. Texas*, (1979) 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323.

This commitment proceeding was commenced by Mr. Lee Miller, warden of the Porter County Police Department, at a time when appellant Linderman was being held at the Porter County Jail awaiting transportation to the State Farm to serve a one year sentence for driving under the influence of alcohol. Miller filed the petition for involuntary commitment because he believed there was "something radically wrong with Frank." Miller based this conclusion upon certain conversations he had

had with Linderman during the period of his incarceration. According to Miller, Linderman claimed other people had stolen from him and were putting "acid" on him and poisoning him for no apparent reason. Miller testified that he found no basis in fact for Linderman's complaints and accusations. On direct examination Miller expressed his opinion that Linderman might cause harm to himself or others and was not able to take care of himself. But during cross-examination Miller admitted he had no knowledge of Linderman ever having attempted to cause physical harm to himself or anyone else; nor was Miller aware of Linderman's occupation or financial status.

The trial court also heard the testimony of a psychiatrist, Dr. Borivoj Divcic. Dr. Divcic found appellant Linderman to be psychotic and suffering from hallucinations and delusions. It was Divcic's opinion that Linderman was unable to take care of himself and needed long-term hospitalization.

The only other testimony came from Ms. Vickie Conquest, a Porter County Probation Officer who had contact with Linderman since May of 1978. Conquest testified that Linderman visited her at her office sometimes three or four times a month. She stated that on several occasions she had observed Linderman driving his car and that "he always seemed to be mobile and have money in his pocket."

While this evidence was sufficient to prove Frank Linderman suffered from a mental illness, the State failed to prove by clear and convincing evidence that the appellant was "dangerous." There was no evidence Linderman ever threatened physical harm to himself or anyone else; there

was, in fact, no evidence of any violent behavior.

Nor do we find the State proved by clear and convincing evidence that Linderman was "in danger of coming to harm because of his inability to provide for his food, clothing, shelter, or other essential human needs." IC 16–14–9.1–1(b). First, there was little evidence to prove Linderman's illness rendered him incapable of providing for himself. There was no evidence that he lacked clothing or the ability to dress himself. There was no evidence Linderman lacked food or refused to eat. The evidence did not show he was without a residence or other suitable shelter. Nor was there evidence Linderman lacked financial resources. Instead, the testimony of Vickie Conquest suggested that Linderman owned and drove his own automobile and had money. There were no facts in evidence to support Dr. Divcic's conclusion that Linderman was not able to take care of himself.

Moreover, even if the State had established Linderman's inability to provide for himself, *which it did not*, the State failed to prove Linderman was "in danger of coming to harm" as a result of that inability. Specifically, the State failed to negate the possibility that Linderman could be cared for by family or other responsible community members.[1] In *O'Conner v. Donaldson*, (1975) 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396, the U. S. Supreme Court held a court may not commit a non-dangerous individual "who is capable of surviving safely in freedom by himself *or with the help of willing and responsible family members or friends."* *Id.* at 576, 95 S.Ct. at 2494. (emphasis added)[2] We believe the

---

1. Dr. Divcic was asked:
   Q: Did you inquire as to whether or not he had any relatives or family members in this area who could assist him?
   His response was:
   A: I don't remember that conversation.

2. *O'Conner v. Donaldson* could be distinguished by the fact that Donaldson's confinement was no more than "enforced custodial care, not a program designed to alleviate or cure his supposed illness," *Id.* at 569, 95 S.Ct. at 2490, thus raising the question whether the

State may constitutionally commit an individual for *treatment* regardless of his ability to function in society. On this point we agree with Chief Justice Burger's concurring opinion in *O'Conner v. Donaldson*:

"[T]o permit a State to confine an individual simply because it is willing to provide treatment, regardless of the subject's ability to function in society, ... raises the gravest of constitutional problems ...."

burden rests with the State to prove a reasonable attempt has been made to contact family members in this regard.

Therefore, we conclude the State failed to prove by clear and convincing evidence that appellant Frank Linderman was dangerous or gravely disabled. The decision of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion.

YOUNG, P. J., and MILLER, J., concur.