John R. DEAL, Respondent-Appellant,

v.

STATE of Indiana, Petitioner-Appellee.

No. 1–882A247.

Court of Appeals of Indiana, First District.

March 8, 1983.

Rehearing Denied April 15, 1983.

Russell T. Woodson, Berger & Berger, Evansville, for respondent-appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Latrialle Wheat, Deputy Atty. Gen., Indianapolis, for petitioner-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Appellant John Deal appeals from a decision of the Posey Circuit Court ordering Deal's involuntary commitment. We affirm.

## FACTS

On April 7, 1982, Deal was found not responsible by reason of insanity on a charge of attempted murder. The State of Indiana filed a petition for involuntary commitment on April 26, 1982. While awaiting the disposition of the commitment proceedings, Deal was incarcerated in the Posey County Jail.

Hearing on the involuntary commitment was held on May 12, 1982. The court took judicial notice of the record of the prior criminal proceedings. During the pendency of the hearing the state requested, and the court granted, leave to amend the commitment petition to include a statement of C.H. Crudden, M.D. The appellant's subsequent motion to dismiss was denied. At the conclusion of the hearing the court ordered regular commitment for Deal, and on May 26, 1982, Deal was committed to the Evansville State Hospital. From this determination he now appeals.

## ISSUES

Deal presents three issues on appeal. Rephrased, they are as follows:

1. Did the court err in ordering regular commitment of Deal absent clear and convincing evidence that Deal was dangerous?

2. Did the court err in allowing the state to amend its petition to include the statement of Dr. Crudden?

3. Did the court err in denying Deal's motion to dismiss?

## DISCUSSION AND DECISION

*Issue One*

The trial court did not err in ordering regular commitment.

Deal asserts that the court erred in ordering regular commitment. He argues that the state has not met its burden of proof concerning whether he is dangerous or gravely disabled. We cannot agree.

Deal's commitment was sought pursuant to Indiana Code Section 35–5–2–5(a) (1980). That section states:

"Whenever a defendant is found not responsible by reason of insanity at the time of the offense, the prosecuting attorney shall file a written petition with the court under IC 16–14–9.1–8(c) or under IC 16–14–9.1–10. If a petition is filed under IC 16–14–9.1–8(c), the court shall hold a commitment hearing under IC 16–

14–9.1–9. If a petition is filed under IC 16–14–9.1–10, the court shall hold a commitment hearing under IC 16–14–9.1–10. The hearing shall be conducted at the earliest opportunity after the finding of not responsible by reason of insanity at the time of the offense, and the defendant shall be detained in custody until the completion of the hearing. The court may take judicial notice of evidence introduced during the trial of the defendant and may call the physicians appointed by the court to testify concerning whether the defendant is currently mentally ill and dangerous or currently mentally ill and gravely disabled, as those terms are defined by IC 16–14–9.1–1. The court may subpoena any other persons with knowledge concerning the issues presented at the hearing. The defendant has all the rights provided by the section of IC 16–14–9.1 under which the petition against him was filed. The prosecuting attorney may cross-examine the witnesses and present relevant evidence concerning the issues presented at the hearing."

Indiana Code Section 16–14–9.1–10 states, in pertinent part:

"(b) Direct proceedings for the regular commitment (without prior temporary commitment) of a person who appears to be suffering from a chronic mental illness which is reasonably expected to require custody, care or treatment in an appropriate facility for a period exceeding ninety (90) days, may be initiated by the filing with a court having jurisdiction of a written petition by a health or police officer, a friend, relative, spouse, or guardian of the person, the superintendent of an appropriate facility where the person may be found, or a prosecuting attorney, in accordance with IC 35–5–2–5. The petition must include a physician's written statement which states that:

(1) he has examined the person within the past thirty (30) days; and

(2) he is of the opinion that the person is mentally ill and either dangerous or gravely disabled and in need of custody, care or treatment in an appropriate facility for a period expected to exceed ninety (90) days.

(c) Upon receipt of the report or petition, if care and treatment in an appropriate facility for a period expected to exceed ninety (90) days is recommended, the court shall enter an order setting a hearing date. If the patient is currently under commitment, the hearing must be held prior to the expiration of the current commitment period. Notice of hearing must be given to the patient and all other interested persons at least five (5) days prior to the hearing date, excluding Saturdays, Sundays, and legal holidays. Patient rights and hearing procedures are the same as those provided in section 9 of this chapter.

(d) If, at the completion of the hearing and the consideration of the record, the patient is found to be:

(1) mentally ill and either gravely disabled or dangerous; and

(2) in need of custody, care, or treatment, or in need of continued custody, care, or treatment;

the court may order the patient's custody, care, or treatment, or continued custody, care, or treatment in an appropriate facility until the patient has been discharged or until the court enters an order terminating the commitment."

Deal contends that the state failed to prove by clear and convincing evidence that he was "either gravely disabled or dangerous. . . ." *Id.* The record does not bear out this contention.

■ Appellant correctly notes that the state's burden in any such proceedings must be met by clear and convincing evidence. *See Addington v. Texas,* (1979) 441 U.S. 418, 425–33, 99 S.Ct. 1804, 1808–13, 60 L.Ed.2d 323; *In the Matter of the Commitment of Linderman,* (1981) Ind.App., 417 N.E.2d 1140, 1140. From the evidence presented at the hearing, it is clear that Deal is not gravely disabled in the sense that he is able to feed and clothe himself and generally provide himself with such creature comforts as he needs and desires. However, the state contends that the evi-

dence adduced at the hearing presented in a clear and convincing manner the fact that Deal is dangerous. Indiana Code Section 16–14–9.1–1(c) (1982) defines "dangerous" as "a condition in which a person as a result of mental illness represents a substantial risk that he will harm himself or others." *Id.* We agree that the state has met its burden of proof.

■ Deal was declared not responsible by reason of insanity for an attempted murder. The court took judicial notice of the evidence which led the jury in the criminal case to reach its conclusion. This included the fact that Deal believed his social security checks were being stolen by those around him and that his lawyers had taken his house and given it to the man whom he had stabbed. He also believed that he had been exonerated at the criminal proceeding and could not understand why he was still incarcerated. Doctor Crudden's report, attached to the petition as Exhibit A, detailed his observation of Deal's condition. The letter stated, in part:

"From the information available and the results of my examinations it is my opinion John R. Deal is suffering from organic brain deterioration. He appears to be originally of borderline intelligence and now is undergoing a degeneration brain process that leaves large gaps in his memory, which are filled in by the individual when questioned by random contradictory statements. Likewise, the forgetfulness and increased difficulty in understanding often leads to paranoid ideation.

It is my opinion that such is happening to Mr. Deal. I would consider him psychotic or insane, unable to differentiate right from wrong or adhere to the right if so minded.

His psychiatric diagnosis could be considered as Organic Dementia, moderate chronic, progressive probably due to senility and prolonged excessive use of alcohol. In addition he evidences much paranoid ideation, sometimes a complication of such organic brain deterioration where a combination of forgetfulness, misunderstanding and poor judgment can lead to dangerous and destructive behavior such as assault on another person, or burning a house down. I would, therefore, consider Mr. Deal dangerous because of his paranoid ideas concerning his Social Security check. His mental disability is such that it appears he is unable to handle money or care for himself in an unrestricted social environment.

In my opinion, he needs to be placed in a restrictive environment such as a mental hospital for custodial care and treatment. Since his disability is usually chronic, progressive and increasing in severity, what treatment that could be given, can only hope to retard the rapidity of the degeneration progress and eleviate his paranoid moods, and in an environment where there is less chance to act destructively to these paranoid ideas."

Record at 10. Doctor Crudden also testified at the hearing that Deal was dangerous to other people. The evidence presented is clear and convincing. We cannot say that the court erred in ordering regular commitment.[1]

*Issues Two and Three*

The court did not err in allowing the state to amend its petition or in denying Deal's motion to dismiss.

During the pendency of the hearing, the state moved to amend its petition to include Dr. Crudden's physician's statement. Deal objected and moved the court to dismiss the

---

1. Deal gives great weight to certain portions of Dr. Crudden's testimony in which the doctor indicated that Deal was potentially dangerous. Deal argues that a mere potential is an insufficient basis upon which to order commitment. However, it is clear from the evidence that the doctor's remarks were not a retreat from his previous unequivocal statements that Deal was dangerous, but rather were a clarification of the fact that Deal was dangerous under certain circumstances. Doctor Crudden noted that the appellant was clearly not dangerous as he sat before the court. However, a very real danger existed when Deal dealt with financial affairs, especially his social security checks, which aroused his paranoid delusions concerning their theft. This was sufficient to support a conclusion that Deal was dangerous to others.

petition. The court granted the state's motion and denied Deal's motion. Deal contends that both actions were error. We cannot agree.

Deal first argues that the court erred in allowing the state to amend its petition. Indiana Code Section 16–14–9.1–10(b) (1982) states, in pertinent part:

"The petition must include a physician's written statement which states that:

(1) he has examined the person within the past thirty (30) days; and

(2) he is of the opinion that the person is mentally ill and either dangerous or gravely disabled and in need of custody, care or treatment in an appropriate facility *for a period expected to exceed ninety (90) days.* [Emphasis supplied.]"

Deal contends that it was error to allow the amendment where the physician's statement does not state that the person must be committed for a period in excess of ninety (90) days as required by statute. Appellant's argument is not well taken.

■ The pre-printed physician's statement contains the following language: "In my opinion commitment for a period not to exceed ninety (90) days is likely to be of sufficient duration to achieve a significant improvement in the patient's condition." Record at 12. Below this Dr. Crudden checked the box marked "No." *Id.* It is specious at best to argue that this is not indicative of the physician's opinion that Deal should be committed for a period in excess of ninety days. The language of the form is sufficient to satisfy the statutory requirement.

We also note that, in any event, the granting of leave to amend a pleading is a matter within the sound discretion of the lower court.[2] *Hoosier Plastics v. Westfield Savings & Loan Association,* (1982) Ind. App., 433 N.E.2d 24, 29, *trans. denied; B &*

*D Corp. v. Anderson, Clayton & Co.,* (1979) Ind.App., 387 N.E.2d 476, 481–82, *trans. denied; Selvia v. Reitmeyer,* (1973) 156 Ind. App. 203, 206, 295 N.E.2d 869, 872. We will not reverse the court below absent a showing of manifest abuse of discretion. Insofar as the amended petition contained the statutory requisites, we cannot say that the court erred in allowing the amendment of the petition.

■ Deal also argues that the lower court erred in denying his motion to dismiss. He again notes that Indiana Code Section 16–14–9.1–10(b) states that "the petition must include a physician's written statement which states that . . . he is of the opinion that the person is . . . in need of custody, care or treatment in an appropriate facility for a period expected to exceed ninety (90) days." As the petition in the instant case did not contain such a statement when it was originally filed, Deal contends that the court erred in not granting his motion to dismiss. Again we cannot agree.

Upon the state's request for leave to amend its petition, defendant objected and moved for dismissal of the petition. We have already noted that the grant of the amendment was a matter within the sound discretion of the lower court. We find no abuse of discretion in such grant. Insofar as the court did not err in granting the motion to amend in order that the petition might conform to statutory requirements, there was no error in denying the motion to dismiss.[3]

As we find no reversible error in the actions of the lower court, we affirm its decision in all respects.

Affirmed.

ROBERTSON, P.J., and NEAL, J., concur.

---

**2.** For purposes of this review we consider the petition as a complaint for involuntary commitment and, therefore, apply Indiana Rules of Civil Procedure, Trial Rule 15(A).

**3.** We also note that the defendant requested the motion to dismiss during the hearing and only after the state had moved for leave to

amend. We further note that the court offered Deal a continuance upon its grant of the state's motion to amend, which offer Deal refused. We cannot say, under such circumstances, that the court erred in failing to grant the motion to dismiss.