

# IN THE
# Court of Appeals of Indiana

Brandon Francis Schaefer,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

FILED

Apr 11 2025, 9:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

April 11, 2025

Court of Appeals Case No.
24A-CR-1387

Appeal from the Vanderburgh Circuit Court

The Honorable David D. Kiely, Judge
The Honorable Celia M. Pauli, Magistrate

Trial Court Cause No.
82C01-2301-MR-23

**Opinion by Judge Brown**
Judges May and Foley concur.

**Brown, Judge.**

[1] Brandon Francis Schaefer appeals his conviction for murder following a jury trial. Specifically, the jury found Schaefer guilty but mentally ill. He asserts that the trial court abused its discretion when it, sua sponte and over his objection, instructed the jury on the possible penal consequences of a not responsible by reason of insanity verdict and a guilty but mentally ill verdict. We affirm.[1]

## Facts and Procedural History

[2] On January 1, 2023, twenty-one-year-old Schaefer called 911 and reported that he had killed a man. Schaefer told the dispatcher where the victim's body was located, he described the handgun he used to shoot the victim, and he explained where he had left the weapon at the crime scene. Schaefer stated that he did not know the man and that he "randomly did it" and "shot him" because "you know, you get thirsty and then you just do it." State's Exhibit 2 at 3:42-3:45, 5:23-5:25. Schaefer was extremely emotional and sobbing as he told the dispatcher he intended to kill himself because of what he had done, so the dispatcher kept him on the phone trying to keep him calm until police arrived at his apartment and took him into custody.

---

[1] We held oral argument on March 31, 2025, at Brown County High School in Nashville, Indiana. We thank the administrators and students for their hospitality, and we thank counsel for traveling as well as for their well-prepared written and oral advocacy.

[3] Police went to the wooded area behind the North Park movie theatre in Evansville where Schaefer had directed them, and located the deceased victim, Todd Roll, a homeless man, lying in a creek bed. Schaefer told police, and an autopsy confirmed, that he shot Roll once in the head with a semiautomatic .45 caliber handgun. Roll was asleep when Schaefer shot him at close range. Officers searched the wooded area and located the handgun "in the creek just off the creek bank" as well as "a sock hat and some gloves with a shell casing inside on the far creek bank to the east." Transcript Volume II at 36.[2]

[4] When interviewed by police a few hours after his 911 call, Schaefer explained that, after killing Roll, he initially tried to hide Roll's body in a dumpster but instead dragged the body to the nearby creek ravine which is also where he threw away the hat and gloves. He also told police that he noticed blood on his clothes and so he disposed of them and put on a pair of Roll's pants and a shirt that he found at the scene. Schaefer explained, "Technically, . . . I was trying to hide the evidence." State's Exhibit 21 at 10:24-10:26. Schaefer stated that he had considered killing random people on other occasions but had not done so. He stated that he killed Roll because he felt "numb" and wanted to do something that made him feel again. *Id*. at 5:32. Schaefer said that he called his sister and his brother shortly after the murder to say goodbye because he intended to kill himself.

---

[2] Evansville Police Department Detective Mark DeCamps further explained, "inside the hat was a pair of gloves and inside one of the gloves was a shell casing[.]" Transcript Volume II at 42.

[5]    On January 4, 2023, the State charged Schaefer with murder. The State also filed a sentence enhancement based on Schaefer's use of a firearm to commit the murder. On February 21, 2023, Schaefer filed a "Notice of Insanity" and "Motion for Competency Evaluation." Appellant's Appendix Volume II at 12-13. On March 10, 2023, the court appointed Dr. Kevin Hurley and Dr. George Parker to evaluate Schaefer. Dr. Hurley filed a report on May 11, 2023, concluding that Schaefer was not suffering from a mental disease or defect at the time of the murder and that he was able to appreciate the wrongfulness of his conduct. Dr. Parker filed his report on July 5, 2023, concluding that Schaefer was suffering from a mental disease or defect at the time of the murder but was able to appreciate the wrongfulness of his actions. Both doctors found Schaefer competent to stand trial, and the court proceeded to set a trial date.

[6]    The court held a jury trial that began on April 22, 2024. At the outset, while jury selection was still ongoing, the prosecutor made an oral motion in limine to prevent the parties from discussing the penal consequences of the four potential verdicts with prospective jurors. The prosecutor argued, "I think it was improper for [defense counsel] in the jury selection to talk about what might happen. I think they should be prohibited from talking about what the results of the verdict will be." Transcript Volume II at 14.[3] Defense counsel objected, citing *Smith v. State*, 502 N.E.2d 485 (Ind. 1987). He argued:

---

[3] The record does not include a transcript of voir dire.

[*Smith*] discusses the ability to tell the jury what the potential verdicts are and what the affect [sic] of the verdict is without talking, it's not like we talk about he goes to prison for forty-five or sixty-five years, that would be improper. It is also not proper to say that you know he's going to get committed for thirty years or whatever it might be, but it is proper to tell them that if he is found not responsible that he gets committed, if he's found guilty or guilty but mentally ill he goes to prison, I think that's pretty obvious. He doesn't get a probated sentence obviously.

Transcript Volume II at 15. The court ruled, "I'm going to grant the motion in limine regarding penalties," explaining that while the parties would be permitted to "present the four different verdict options," it did give the court "pause describing what happens essentially post-verdict, so I will do some research about explaining what happens upon a verdict of not guilty by reason of insanity or guilty but mentally ill." *Id.*

[7]   After a short recess, the court stated:

We are still outside the presence of the potential jury. I did review that case that [the defense] cited . . . I suspect this is before pattern jury instructions so the way I read this it says it would be appropriate to give an instruction explaining the consequences of each determination which the Court will do because there is a pattern instruction on that. It says "Allowing comment during final argument would place the fairness of the determination of guilt or innocence at great risk since it would unduly focus the jury's attention on the sentencing," so with respect to the State's motion regarding penalties specifically about what would happen post-verdict with the different verdicts, so the Court is going to grant that motion. The parties are permitted to essentially, if you want to explain what is in the pattern instruction you're free to do so but anything beyond that I think is impermissible.

*Id.* at 18-19. Defense counsel stated, "Just so we're clear, we can talk about what the potential verdicts are?" *Id.* at 19. The court responded, "Of course, of course, absolutely, there are four different verdicts and I think you are free to do so but as far as the consequences of those verdicts the Court is going to limit you to what is in the pattern instruction and its pattern 11.1700." *Id.* Ind. Pattern Jury Instruction 11.1700 provides:

> If the Defendant is found guilty but mentally ill at the time of the crime, the court will sentence the Defendant in the same manner as a Defendant found guilty of the offense. The Defendant will then be further evaluated and treated as if psychiatrically indicated for his illness.
>
> If the Defendant is found not responsible by reason of insanity at the time of the crime, the prosecuting attorney will file a petition for mental health commitment with the court. The court will hold a mental health commitment hearing at the earliest opportunity. The Defendant will be detained in custody until the completion of the hearing. If the court finds that the Defendant is mentally ill and either dangerous or gravely disabled, then the court may order the Defendant to be either placed in an outpatient treatment program of not more than ninety (90) days, or committed to an appropriate mental health facility until a court determines commitment is no longer needed.

Appellant's Appendix Volume II at 12. The court provided copies of the instruction to the parties and continued with jury selection.

[8] When jury selection was complete, the court gave the jury preliminary instructions, including an instruction indicating that Schaefer had raised the defense of insanity, and that the burden rested with him to prove, by a

preponderance of the evidence, that he was not responsible by reason of insanity at the time of the offense. Appellant's Supplemental Appendix Volume II at 7. Preliminary Instruction No. 8 explained:

> The defense of insanity is defined by law as follows:
> A person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense.
>
> "Mental disease or defect" means a severely abnormal mental condition that grossly and demonstrably impairs a person's perception, but the term does not include an abnormality manifested only by repeated unlawful or anti-social conduct.

*Id*. at 7-8.

[9] During opening statements, both the prosecutor and defense counsel referenced the possible verdicts. The prosecutor told the jury that the evidence would demonstrate that the "primary issue" was whether Schaefer was guilty or not responsible by reason of insanity. Transcript Volume II at 23. Defense counsel told the jury that one of its tasks was to determine "what path [Schaefer's] life takes in the future" and that it had the choice of "at least right now four possible" verdicts or paths. *Id*. at 26. Counsel explained that the "extreme" ends of the "spectrum" were a guilty verdict or a not guilty verdict, and that the verdicts in the "middle" were guilty but mentally ill and not responsible by reason of insanity. *Id*. at 26-27. Defense counsel then went a step further by referring to the penal consequences of a not responsible by reason of insanity

verdict, stating that it was not simply "a get out of jail free card" but a "path where hopefully [Schaefer] would be able to get treatment[.]" *Id.* at 27.

[10] Thereafter, the State presented the testimony of police officers, a forensic pathologist, a forensic firearms examiner, and a DNA analyst. Schaefer presented the testimony of one of his former high school teachers, Mary Feagley, educator Matt Rebeck, and his sister Amanda Metzger. Feagley testified to her recollection of incidents of strange behavior by Schaefer when he was in her class in 2019, including him reporting that he heard voices telling him to do bad things. Feagley stated that it was her belief at that time that Schaefer "needed" treatment because he "was mentally ill and needed help." *Id.* at 107. Rebeck testified that he had reviewed Schaefer's educational records before interviewing him regarding special education support in 2018, that Schaefer had reported "meltdowns, nervous breakdowns, those kinds of things," and that he qualified for "support and services based on his social emotional needs at that time." *Id.* at 111, 112. Metzger testified that, after graduating high school, Schaefer lived with her for a period of time but eventually obtained a job and his own apartment. She recalled one incident during which Schaefer was hospitalized briefly in Kentucky after an "incident in the park" that involved "a knife." *Id.* at 116. Metzger stated that Schaefer called her after the murder, "very upset and said that he messed up and wanted to take his own life." *Id.* at 113.

[11] After those witnesses testified, the court explained to the jury that, pursuant to its duty in a case where an insanity defense has been raised, it had appointed

two disinterested psychiatrists and/or psychologists "to testify at trial concerning their opinion about [Schaefer's] sanity at the time of the offense." *Id*. at 123. The court then presented the testimony of psychologist Dr. Hurley and psychiatrist Dr. Parker.

[12] Dr. Hurley testified that it was his opinion that Schaefer was not suffering from a mental disease or defect at the time of the murder and that he was able to appreciate the wrongfulness of his conduct. In coming to this conclusion, Dr. Hurley stated that he considered Schaefer's attempts to conceal Roll's body, the fired ammunition casing, and other behaviors "that appeared to be attempting to . . . conceal evidence" as indications that he was aware of the wrongfulness of his conduct. *Id*. at 126. He also referenced how Schaefer called his sister shortly after the murder and said he had "messed up and done something wrong." *Id*.

[13] Dr. Parker testified that, unlike Dr. Hurley, it was his opinion that Schaefer was indeed suffering from a mental disease or defect at the time of the murder, namely depression with psychotic features, and that he was likely experiencing a dissociative episode. Nevertheless, Dr. Parker concluded that Schaefer was still able to appreciate the wrongfulness of his actions. Dr. Parker explained that in reaching this conclusion, he found Schaefer's behavior after the murder significant. He stated, "behaviors, what he did immediately after the alleged offense, and then his emotional reaction to what he had done, so those are two large areas and they both trended in the same direction and I think indicate that he did appreciate the wrongfulness of his actions." *Id*. at 168. Dr. Parker noted

that the evidence indicated that Schaefer was quite emotional in his 911 call, wrote a suicide note, called both his brother and sister, and confessed to his sister that he knew he had done something wrong.

[14] After the testimony of the two court-appointed doctors, Schaefer presented the testimony of high school counselor Kelli Alcorn, and Kentucky-based psychiatrist Dr. Timothy Allen. Alcorn testified to an incident involving Schaefer in 2017 during which he was experiencing "labored breathing" and she thought he was having something more than a "typical" "panic attack" that they "couldn't get him to come out of." *Id*. at 183, 184. Medical personnel responded to the school, Schaefer became "very combative," and he was ultimately "handcuffed" to a gurney and transported to the hospital in an ambulance. *Id*. at 185.

[15] Dr. Allen stated that, after reviewing records and interviewing Schaefer twice for a total of four hours, he believed Schaefer "has broadly a dissociative disorder." *Id*. at 199. Dr. Allen testified, "I think its's the depersonalization derealization syndrome where there are times where he feels like he's sort of out of his body, he's sort of watching himself, he has very little control over what's going on[.]" *Id*. at 199-200. He agreed that Schaefer met the "mental illness portion" or "first prong" of the "two-part test" "for insanity in Indiana." *Id*. at 203-204. He explained his understanding that, in Indiana, a defendant raising an insanity defense has to "have a mental illness" and also "be unable to appreciate the wrongfulness of [his] act due to that mental illness to meet the standard." *Id*. at 203. Although Dr. Allen believed Schaefer was unable to

fully control his behavior when he killed Roll, he acknowledged that he believed Schaefer was "aware of what he was doing." *Id.* at 217. When twice asked whether he agreed that Schaefer "was not insane at the time of the commission of the crime," Dr. Allen stated, "Right, I think, again, the law is very strict" and "I don't think he meets that strict criteria." *Id.* at 211, 217. When Dr. Allen was finished testifying, the jury asked him multiple questions, including asking, "With treatment can a person function in society or will they have to be under constant care?" *Id.* at 221. Dr. Allen indicated that Schaefer's disorder could "be treated" and that such treatment "needs to be initially much more intensive" but "people with this disorder can get treatment and get better." *Id.*

[16] At the conclusion of the evidence, the trial court discussed final jury instructions with the parties and expressed its desire to include Pattern Jury Instruction 11.1700 as Final Jury Instruction No. 11. The court explained its reasoning for giving the instruction as follows:

> I recognize there's caselaw that says the instruction should be given if requested by the defense, I've done research, I haven't found any additional cases that say that it's limited to only if the defense [requests it], my concern is the jury has already heard it both in jury selection and opening so that door has kind of been open. The Court's position, it doesn't seem fair that the defense has been able to use it kind of as a sword and a shield to say oh bring it up to the jury to put it in their minds but then we're not going to request the instruction. I don't want the jury now that it's been brought up the concern the Court has is now they don't know what the law is, their [sic] not going to have a guideline on it.

*Id.* at 230. Although the prosecutor remained "neutral" regarding the instruction, the prosecutor agreed with the court that the defense had put the issue before the jury and expressed concern that the jury had asked "a specific question about treatment" which indicated the jury was "clearly thinking" about post-verdict consequences. *Id.* at 228, 229. Defense counsel objected to the instruction citing the Indiana Supreme Court's opinion in *Georgopulos v. State*, 735 N.E.2d 1138 (Ind. 2000), in support of his objection. Defense counsel argued that while *Georgopulos* holds that the trial court "is required to give an appropriate instruction" when requested by a defendant when the verdict options include not responsible by reason of insanity or guilty but mentally ill, such a holding does not give "carte blanch[e] to just arbitrarily giving the instruction or the Court giving the instruction on its own if the Defendant objects." *Id.* at 233-234.

[17] After a short recess, the court determined it would indeed add the pattern jury instruction to final instructions and further explained,

> The reason, the basis for that, is both sides have brought up the consequences of the results of the guilty but mentally [ill] and not responsible due to insanity both in jury selection and opening, as I mentioned earlier there was a reference [to] it not being a get out of jail free card. The concern that the Court has is the jury, it's been put in the jury's mind, I've instructed the jury that they will receive instructions and that's the best source of determining the law so I believe that the jury needs the instruction and both sides have objected to the characterization of the consequences so the concern again for the jury is that they don't have an instruction that they can look to. It's a correct statement of the law, it's a pattern instruction, I believe the argument in evidence

supports it, and I don't believe its covered by any other instruction so for those reasons the Court is going to give the pattern instruction 11.1700.

*Id*. at 232-233. The court again noted that it had reviewed the case law submitted by defense counsel and had done additional research but "did not find any cases that limited [the court] giving the instruction only if defendant requested it" and, under the circumstances presented, the court "would have no qualms in not giving the instruction if [Schaefer] didn't request it" had the issue "not been brought up by defense both in jury selection and in opening statements so those are the reasons the Court is giving it." *Id*. at 234. Accordingly, the court read Ind. Pattern Jury Instruction 11.1700 as Final Instruction No. 11.

[18] The jury found Schaefer guilty but mentally ill. Schaefer waived his right to a jury trial on the sentence enhancement and admitted that it applied to him. The court sentenced Schaefer to sixty years in the Department of Correction ("DOC") with the recommendation that he receive mental health treatment while incarcerated.

## Discussion

[19] Schaefer asserts that the trial court abused its discretion when, on its own accord and over his objection, the court read to the jury Ind. Pattern Jury Instruction 11.1700 which provides a general description of the consequences of a guilty but mentally ill verdict and a not responsible by reason of insanity verdict. He argues that "it is improper to instruct the jury of the penal

consequences of a verdict" unless the jury has been "misled as to the law" and he challenges "the court's authority to give the instruction over his objection." Appellant's Brief at 10-11.

[20] That State responds that Schaefer has waived review of this issue because, at his request, the trial court authorized the parties to discuss the potential verdicts and the consequences thereof during jury selection but limited the discussion to that which is outlined in Pattern Jury Instruction 11.1700.[4] The State maintains that, in the event Schaefer did not waive review, the case law does not limit the giving of the instruction at issue to only if the defense requests it, and that the trial court retains discretionary authority to ensure that the jury is "properly instructed." Appellee's Amended Brief at 19.

## A. *Waiver*

[21] The State first argues that Schaefer has waived his instructional error claim and cites the general waiver rule that the failure to lodge a timely objection to a jury instruction waives review of whether the giving of the instruction was error. *Miller v. State*, 188 N.E.3d 871, 874 (Ind. 2022). The State points out that Schaefer was the party that essentially requested the court's permission to discuss the information similar to that outlined in the pattern jury instruction during voir dire, but that he apparently "changed his mind" at the end of trial "about what the jury should know." Appellee's Amended Brief at 15, 16. The

---

[4] The State notes that the "limited record provided by Schaefer shows that the subject was discussed with the potential jurors" during voir dire. Appellee's Amended Brief at 14.

State argues that "[i]f the trial court had sustained Schaefer's belated objection, the trial court would have had no choice but to declare a mistrial[.]" *Id*. at 16.

[22] Schaefer maintains that there is no waiver because his objection to the challenged jury instruction was "timely," as it was made immediately after the court indicated its intent to give the instruction. Appellant's Amended Reply Brief at 6. He further argues that he did not invite the trial court's error "during the discussion on the Motion in Limine" as suggested by the State. *Id.* at 7.

[23] Based upon the record, we decline to conclude that Schaefer has waived appellate review of this instructional challenge. He contemporaneously objected to the instruction when the court indicated its intent to give it, and he made a detailed record regarding his objection. Moreover, Indiana appellate courts have a well-established preference in resolving "cases on the merits" rather than on procedural grounds such as waiver. *Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015). Accordingly, we elect to consider the substance of Schaefer's challenge to the trial court's instruction of the jury.

B. *Penal Consequences Jury Instruction*

[24] "The purpose of a jury instruction 'is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict.'" *Ramirez v. State*, 174 N.E.3d 181, 199 (Ind. 2021) (quoting *Dill v. State*, 741 N.E.2d 1230, 1232 (Ind. 2001)). A claim of error in instructing a jury is reviewed for an abuse of discretion. *Dunn v. State*, 230 N.E.3d 910, 914 (Ind. 2024). "An abuse of

discretion arises when the instruction is erroneous and the instructions taken as a whole misstate the law or otherwise mislead the jury." *Isom v. State*, 31 N.E.3d 469, 484-485 (Ind. 2015), *cert. denied*, 577 U.S. 1137, 136 S. Ct. 1161 (2016).[5]

[25]     In *Smith v. State*, the Indiana Supreme Court recognized that

> the consequences of verdicts of insanity and guilty but mentally ill are not principles of law, rather sentencing ramifications. Under Indiana law, juries play no role in the sentencing in non-capital cases. It is generally inappropriate both to give an instruction identifying specific penal consequences of a determination of guilt and to permit detailed comment during final argument. However, in cases involving the insanity defense, there will be increased speculation on the part of the jury on the differences in sentencing between verdicts of guilty, guilty but mentally ill and not responsible by reason of insanity. In order to dispel the speculation and focus the jury on the issue of guilt, rather than possible punishment, an instruction explaining the consequences of each determination in a general way can be appropriate and beneficial to the accused.

502 N.E.2d 485, 488 (Ind. 1987). In *Caldwell v. State*, the Indiana Supreme Court again recognized the general proposition that it is not proper to instruct the jury on the statutory procedures to be followed after a verdict of guilty but

---

[5] Schaefer contends that the general three-part test for analyzing the appropriateness of jury instructions does not apply in this case because he is not challenging the court's decision to give the instruction in question but rather the court's authority to give the instruction over his objection. *See* Appellant's Brief at 12 (citing *Griesinger v. State*, 699 N.E.2d 279, 281 (Ind. Ct. App. 1998), *trans. denied*, for the general standard of review for a trial court's decision to give or refuse a jury instruction is (1) whether the instruction is a correct statement of the law; (2) whether there was evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions given).

mentally ill or not responsible by reason of insanity. 722 N.E.2d 814, 816-817 (Ind. 2000). The Court acknowledged, however, that "a defendant is entitled to an instruction on post-trial procedures if 'an erroneous view of the law on this subject has been planted in [the jurors'] minds." *Id*. at 817 (quoting *Dipert v. State*, 259 Ind. 260, 262, 286 N.E.2d 405, 407 (1972)). The Court noted, "[t]his Court has allowed general instructions on the consequences of the various verdicts to avoid jury confusion." *Id*. at 817 n.2 (citing *Barany v. State*, 658 N.E.2d 60, 65 (Ind. 1995) (quoting *Smith*, 502 N.E.2d at 488)).

[26] In *Georgopulos v. State*, the Indiana Supreme Court observed the longstanding general rule that it is improper to instruct a jury on the specific penal ramifications of its verdicts unless an erroneous view of the law . . . has been planted in [the jurors'] minds.'" 735 N.E.2d 1138, 1141 (Ind. 2000) (quoting *Dipert*, 259 Ind. at 262, 286 N.E.2d at 407). However, due to "the potential for confusion in cases where the jury is faced with the option of finding a defendant not responsible by the reason of insanity or guilty but mentally ill," in the exercise of its supervisory authority, the *Georgopulos* Court adopted the following procedural rule: "When the verdict options before a jury include not responsible by reason of insanity or guilty but mentally ill, and the defendant requests a jury instruction on the penal consequences of these verdicts, the trial court is *required* to give an appropriate instruction or instructions as the case may be." *Id*. at 1143 (emphasis added). In other words, if the defendant requests an instruction on the penal consequences of an insanity verdict, the defendant is entitled to the instruction regardless of whether an erroneous view

of the legal consequences has been planted in the minds of the jurors. *Alexander v. State*, 819 N.E.2d 533, 544 (Ind. Ct. App. 2004).

[27] In light of this precedent, Schaefer argues, "[i]n Indiana, one of two events can lead to the instruction [being] given (1) the defendant can ask for it or (2) it can be given when a misstatement of the law occurred." Appellant's Amended Reply Brief at 8. He argues that *Georgopulos* stands for the specific proposition that "[t]he ability to request an instruction on penal consequences, absent a misstatement of the law, appears to rest solidly with the defense in the State of Indiana." *Id*. at 10. We cannot agree. Simply because an instruction is *required* at the request of the defendant does not mean it is prohibited absent such a request or upon his objection. Moreover, we see no indication that the *Georgopulos* Court intended to limit the trial court's authority to give an approved of instruction on its own accord to instruct what it perceives to be a confused jury.[6]

[28] A review of other jurisdictions reveals that, in similar cases, many require an appropriate penal consequences instruction notwithstanding objection or

---

[6] The *Georgopulos* Court provides examples of an appropriate instruction that tracks relevant statutory language which is similar to, but less precise than, the language used in Pattern Jury Instruction 11.1700 which was given here. *See Georgopulos*, 735 N.E.2d at 1143 n.3. In *Passwater v. State*, the Indiana Supreme Court considered the exact language used in what is now known as Pattern Jury Instruction 11.1700 (then known as 11.20) stating, "We are of the view that the Pattern Instruction represents an improvement over the instruction this Court found appropriate in *Georgopulos* and thus endorse and approve its use." 989 N.E.2d 766, 773 (Ind. 2013).

request.[7] Several others are in line with Indiana in specifically requiring a penal consequences instruction upon the request of the defendant.[8] A few jurisdictions require such an instruction at the request of either party or the jury.[9] Schaefer concedes that "no court in this State has ever explicitly held that the State cannot ask for an instruction on penalties or that the trial court cannot *sua sponte* give one." Appellant's Amended Reply Brief at 8. We will not be the first court to do so. Rather, we are guided by the language used by the *Georgopulos* Court, mindful of what the Indiana Supreme Court did say and what it did not say, as well as our deference to the trial court and its inherent authority to instruct the jury in a manner that informs the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *See Ramirez*, 174 N.E.3d at 199.

---

[7] *See State v. Jones*, 440 S.C. 214, 236, 891 S.E.2d 347, 358 n.3 (2023), *cert. denied*, 144 S. Ct. 1012 (2024) (citing Alaska Stat. Ann. § 12.47.040(c) (West 2022); *People v. Tally*, 7 P.3d 172, 184 (Colo. App. 1999); *Roberts v. State*, 335 So. 2d 285, 288-289 (Fla. 1976); Ga. Code Ann. § 17-7-131(b)(3)(A) (West 2022); Kan. Stat. Ann. § 22-3428(f) (West 2022); *Kuk v. State*, 80 Nev. 291, 392 P.2d 630, 634-635 (1964); *State v. Blair*, 143 N.H. 669, 732 A.2d 448, 451 (1999); *State v. Krol*, 68 N.J. 236, 344 A.2d 289, 304-305 (1975); N.Y. Crim. Proc. Law § 300.10(3) (McKinney 2023); *Commonwealth v. Mulgrew*, 475 Pa. 271, 380 A.2d 349, 351 (1977); Tenn. Code Ann. § 33-7-303(e) (West 2023); *State v. Nuckolls*, 166 W.Va. 259, 273 S.E.2d 87, 90 (1980)).

[8] *See Jones*, 440 S.C. at 236, 891 S.E.2d at 358 n.3 (citing Haw. Rev. Stat. Ann. § 704-402(2) (West 2022) (required when requested by the defendant); *Georgopulos*, 735 N.E.2d at 1143 (same); *Commonwealth v. Chappell*, 473 Mass. 191, 40 N.E.3d 1031, 1042-1043 (2015) (same); *Erdman v. State*, 315 Md. 46, 553 A.2d 244, 249-250 (1989) (same); Mo. Ann. Stat. § 552.030(6) (West 2022) (same); *State v. Hammonds*, 290 N.C. 1, 224 S.E.2d 595, 604 (1976) (same); *State v. Shickles*, 760 P.2d 291, 297-298 (Utah 1988) (same), *abrogated on other grounds by State v. Doporto*, 935 P.2d 484 (Utah 1997)).

[9] *See Jones*, 440 S.C. at 236, 891 S.E.2d at 358 n.3 (citing *People v. Dennis*, 169 Cal.App.3d 1135, 215 Cal. Rptr. 750, 753 (Cal. Ct. App. 1985) (requiring an instruction when requested by the jury or the defendant); *State v. Leeming*, 612 So. 2d 308, 315 (La. Ct. App. 1992) (same); Ky. RCr 9.55 (requiring an instruction when requested by either party).

[29] The record indicates that the issue of possible penalties was clearly placed before the jury when defense counsel referred to the potential penal consequences of certain verdicts during opening statement. Specifically, counsel told the jury that one of its tasks was to determine "what path [Schaefer's] life takes in the future;" that it had the choice of "at least . . . four possible" verdicts or paths; and that a not responsible by reason of insanity verdict was not simply "a get out of jail free card" but a "path where hopefully he would be able to get treatment[.]" Transcript Volume II at 26-27. The trial court determined that this comment as well as comments apparently made by defense counsel during voir dire,[10] combined with the evidence presented at trial, placed the penal consequences of the potential verdicts in the minds of the jury which created a substantial possibility of confusion. Indeed, the jury submitted a question regarding post-trial mental health treatment when, following the testimony of defense witness Dr. Allen, the jury asked whether a person with Schaefer's mental health condition who received "treatment"

---

[10] The record clearly indicates that the post-trial consequences of a verdict of not responsible by reason of insanity was first presented to prospective jurors in this case by the defense, not the State.

would be able to "function in society." *Id.* at 221.[11] Under the circumstances, the trial court was well within its discretion to instruct the jury in a manner that enabled it to comprehend the case clearly and arrive at a just verdict.

[30]     Schaefer maintains that, in order for the trial court to give the instruction absent his request or over his objection, the court needed to specifically identify a misstatement of law. *Georgopulos* does not say this. Even if it did, the record reflects that defense counsel referred to the penal consequences of a not responsible by reason of insanity verdict on multiple occasions, including stating that it was not simply "a get out of jail free card." *Id.* at 27. This statement could be viewed at the very least as a misleading or incomplete statement and one that was need of correction and further explanation.

[31]     It is well settled that "a defendant in Indiana can avoid criminal responsibility by successfully raising and establishing the 'insanity defense.'" *Galloway v. State*, 938 N.E.2d 699, 708 (Ind. 2010) (citing Ind. Code § 35-41-3-6(a)), *reh'g denied*. "A successful insanity defense results in the defendant being found not responsible by reason of insanity ('NRI')." *Id.* (citing Ind. Code §§ 35-36-2-3, -

---

[11] After Dr. Allen's testimony, but before the jury's question was submitted to him, a discussion was "held at side bar with counsel off the record." Transcript Volume II at 220. Due to the timing and context of the sidebar, it appears that the discussion would be relevant to the issue before us and the trial court's reasons for ultimately giving the jury instruction in question. As noted by the State, Schaefer has made no attempt to supplement the record on appeal regarding the contents of the sidebar. To the extent the content of this discussion would have aided our appellate review, it was Schaefer's burden to supplement the record pursuant to Ind. Appellate Rule 31(A) (providing if no transcript of all "or part of the evidence is available" the party may prepare "a verified statement of the evidence from the best available sources, which may include the party's or the attorney's recollection"). As the party asserting error in the trial court's decision-making, Schaefer had the burden of submitting a complete record on appeal. *Moffit v. State*, 817 N.E.2d 239, 247 (Ind. Ct. App. 2004), *trans. denied*.

4). "A defendant who is mentally ill but fails to establish that he or she was unable to appreciate the wrongfulness of his or her conduct may be found guilty but mentally ill ('GBMI')." *Id*. As the *Galloway* Court noted:

> The results of an NRI verdict and of a GBMI verdict are different. When an NRI verdict is rendered, the prosecutor is required to initiate a civil commitment proceeding under either section 12-26-6-2(a)(3) (temporary commitment) or section 12-26-7 (regular commitment) of the Indiana Code. *See* I.C. § 35-36-2-4. The defendant remains in custody pending the completion of the commitment proceeding. *Id*. The trial court may order the defendant committed if it finds by clear and convincing evidence that the defendant is currently mentally ill and either dangerous or gravely disabled. *See Deal v. State*, 446 N.E.2d 32, 34 (Ind. Ct. App. 1983) (citing *Addington v. Texas*, 441 U.S. 418, 425-[4]33, 99 S. Ct. 1804, 60 L.Ed.2d 323 (1979)), *trans. denied. But see Foucha v. Louisiana*, 504 U.S. 71, 87-88, 112 S. Ct. 1780, 118 L.Ed.2d 437 (1992) (O'Connor, J., concurring) (stating that it might be permissible for a state "to confine an insanity acquittee who has regained sanity if . . . the nature and duration of detention were tailored to reflect pressing public safety concerns related to the acquittee's continuing dangerousness"); *Jones v. United States*, 463 U.S. 354, 361-[3]70, 103 S. Ct. 3043, 77 L.Ed.2d 694 (1983) (holding that a defendant who successfully establishes the insanity defense may be committed to a mental institution on the basis of the insanity judgment alone).

*Id.* at 708 n.9. Thus, a not responsible by reason of insanity verdict results in a commitment hearing rather than a sentencing hearing, and a defendant found to be criminally insane will be committed to an appropriate facility rather than

being sentenced to jail or the DOC.[12] Defense counsel's reference to the NRI verdict as not being "a get out of jail free card" hardly provided an accurate or complete picture for the jury of that verdict or the other possible verdicts available in this case. We have little difficulty identifying defense counsel's reference as misleading or a misstatement of law. We conclude that the trial court did not abuse its discretion when it read to the jury Ind. Pattern Jury Instruction 11.1700.

[32] Finally, to the extent Schaefer suggests that the court abused its discretion in giving Ind. Pattern Jury Instruction 11.1700 without also providing an adequate curative or limiting instruction informing the jury that it should not consider the possible penalties in rendering its verdict, we find that claim waived as he did not object to the other final instructions given or request the court to provide a specific curative or limiting instruction.[13] *See Greer v. State*, 543 N.E. 2d 1124, 1126 (Ind. 1989) (finding instructional claim of error based on failure to

---

[12] Ind. Code § 12-26-7-5 provides:

> (a) If at the completion of the hearing and the consideration of the record an individual is found to be mentally ill and either dangerous or gravely disabled, the court may enter either of the following orders:
>
> > (1) For the individual's custody, care, or treatment, or continued custody, care, or treatment in an appropriate facility.
> >
> > (2) For the individual to enter an outpatient therapy program under IC 12-26-14.

[13] Schaefer cites to *Dipert* for the proposition that "the Supreme Court suggested a limiting instruction would be proper" in the event that a penal consequences instruction is given to the jury. Appellant's Brief at 17 (citing *Dipert*, 259 Ind. at 262, 286 N.E.2d at 406-407). In *Dipert*, the Court held in part: "Under the circumstances, the jury should have been instructed that the law provides for further proceedings and alternative dispositions, in the event of a verdict of not guilty by reason of insanity, but that such factors were not the concern of the jury or the court at that time; that the verdict should be based solely upon the law and the evidence presented at the trial; and, that the jury should not consider the ultimate disposition of the case incidental to its verdict." *Dipert*, 259 Ind. at 262, 286 N.E.2d at 406-407.

admonish waived when, following an initial defense objection to the court's instruction and the trial court's response, the defendant failed to "object further" to the trial court's instruction or request a curative instruction or admonition). Waiver notwithstanding, Schaefer concedes the court did instruct the jury "that the judge was solely responsible for the penalties," Appellant's Brief at 18, and we conclude that such instruction was sufficiently curative that we are confident that no reversible error occurred.[14]

[33] For the foregoing reasons, we affirm Schaefer's conviction.

[34] Affirmed.

May, J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

Yvette M. LaPlante
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Ian McClean
Supervising Deputy Attorney General
Indianapolis, Indiana

---

[14] Specifically, Final Instruction I provided:

> These instructions do not contain any information concerning the penalties that could be imposed upon a conviction. The judge is solely responsible for assessing the penalty with a broad range of possibilities. The law has been so written that you may make your decisions without being influenced by the apparent severity or leniency of the sentence.

Appellant's Appendix Volume II at 50.